UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY  DIVISION

ROBIN NEAL,                              )
                                         )
            Plaintiff,                   )
                                         )          4:08-cv-0087-SEB-WGH
      vs.                                )
                                         )
INDIANA GAMING COMPANY, L.P.,            )
                                         )
            Defendant.                   )

**ORDER ADDRESSING PENDING MOTIONS**

This cause is before the Court on Defendant Indiana Gaming Company, L.P.'s

("Indiana Gaming") Motion for Reconsideration [Docket No. 67], filed on March 27,

2009; Defendant's Motion to Dismiss Count III of Plaintiff's Second Amended

Complaint [Docket No. 68], filed on April 9, 2009; and Defendant's Motion for Summary

Judgment [Docket No. 75], filed on July 15, 2009.  Plaintiff Robin Neal ("Neal") claims

that she has suffered discrimination on the basis of her gender and race and that

Defendant retaliated against her, all in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, et seq.  For the reasons detailed below, Defendant's Motion for

Reconsideration is DENIED; Defendant's Motion to Dismiss is GRANTED; and

Defendant's Motion for Summary Judgment is GRANTED.

***Factual Background***

Plaintiff, Robin Neal, an African-American female, is a citizen of Indiana.

Defendant, Indiana Gaming, a limited partnership and wholly owned subsidiary of Penn

National Gaming, Inc., conducts business as Argosy Casino & Hotel, which is located in

Lawrenceburg, Indiana.

Indiana Gaming hired Ms. Neal on November 18, 1996 as a Table Games Dealer.

Dep. of Neal at 22.  During her orientation, Ms. Neal received Indiana Gaming's policies

and procedures set forth in the Indiana Gaming Employee Guidance Manual, and was

trained regarding the policies prohibiting harassment, discrimination, and retaliation.  She

also received subsequent editions of the guidance manual, including the 2006 manual,

which was current at the time of her discharge.  Id. at 171, 232.

**I.      *Indiana Gaming's Discipline Policy***

Pursuant to the "Discipline Policy" described in the Indiana Gaming Employee

Guidance Manual, "minor offenses . . . follow the following steps of progressive

discipline": counseling, a verbal warning, a written warning, suspension, and termination.

Dep. of Thiemann at 31-32.  By contrast, "major offenses" can be dealt with outside of

the progressive discipline steps.  Id.  Even a first major offense, which includes, *inter*

*alia*,  "threatening violence in the workplace," "indecent conduct," and "failure to

conform to standards of . . . demeanor," may result in "disciplinary action, up to and

including separation of employment."  Id. (Ex. 12).  Furthermore, although managers can

2

issue discipline under the policy, an employee cannot be terminated by a manager or department head without the participation of the human resources department.  Id.

A.      *Ms. Neal's Disciplinary History*

On July 21, 1999, Ms. Neal was issued a written warning for yelling at a supervisor in front of customers as well as for subsequent insubordination.  Dep. of Thiemann (Ex. 16).[1]  On December 22, 2005, Ms. Neal received counseling for using inappropriate language with a co-worker.  Dep. of Thiemann (Ex. 17).  In the "employee comments" section of the "Record of Counseling" prepared in connection with this incident, Ms. Neal acknowledged her conduct but also sought to explain that the co-worker's conduct was unacceptable to her.  Id. (stating that he "conducted hi[m]self as a little weas[el], back stabbing person").

On May 30, 2006, Ms. Neal received counseling for "embarrassing" a customer.  Dep. of Thiemann (Ex. 19).   According to the complaint the customer filed with the casino, when he bent the playing cards he was using in a game being run by Ms. Neal, she "repeatedly berated" him.  Id.  These incidents represent all of the disciplinary action taken against Ms. Neal for inappropriate conduct.[2]

---

[1]Ms. Neal wrote a lengthy explanation of her behavior in the "employee comments" section of the "Record of Counseling" prepared in connection with this event.  However, it is unclear whether this explanation amounts to a refutation of the charge, or rather an acknowledgment of the veracity of the charge, because the explanation is illegible as submitted.

[2]In addition to these more serious warnings, Ms. Neal also received, on January 1, 2006,
(continued...)

**II.**      ***Indiana Gaming's Decision to Terminate Ms. Neal's Employment***

According to Ms. Neal, she often became irritated when Table Games Dealer

David Petkovsek gestured at her by tapping his watch to indicate that she had reported

late to relieve him of his duty.  Dep. of Neal at 28.  On December 11, 2006, Mr.

Petkovsek tapped his watch at her as she was exiting the elevator near the game table.  Id.

According to Ms. Neal, Mr. Petkovsek then proceeded to complain aloud and in front of

casino customers that she was frequently late to relieve him for breaks, at which point she

told him not to discuss the matter in front of customers but to talk to the supervisor if he

had a problem.  Aff. of Neal ¶ 6, 7.  Still apparently frustrated, she then told him,

"Enough.  Shut your skinny motherfucking mouth.  Anything else you have to say to me,

you can say it to my two brothers."  Dep. of Neal at 31, 33.[3]

Mr. Petkovsek complained about these comments to Jose Velez, a Table Games

Manager, who in turn shared the complaint with Senior Table Games Manager Ryan

Hinthorne.  Dep. of Hinthorne at 60, 68, 71.  Mr. Hinthorne called Mr. Petkovsek in to

give a statement.  Mr. Petkovsek told him that, in addition to making the above comment,

Ms. Neal threatened that one of her brothers would "kick his ass" and that she referred to

---

[2](...continued)
counseling for returning late to her shift station.  Dep. of Thiemann (Ex. 18).  She explained, in
the Record of Counseling, that this occurred because she was delayed at the benefits office in the
casino, and that she had sent a fellow employee to inform her supervisor and co-workers that this
would result in her tardiness.  Id.

[3]One of Ms. Neal's brothers is an agent with the Federal Bureau of Investigation, a fact
known to "everybody" at the casino.  Dep. of Neal at 287.

him as a "skinny little white boy." Id. at 79, 98.  A customer who was present at the table at the time Ms. Neal made the comments to Mr. Petkovsek also gave a statement in which she said that Ms. Neal called Mr. Petkovsek "a skinny ass motherfucker" and threatened him with violence.  Dep. of Neal at 320; Dep. of Hinthorne at 76, 77; Aff. of Sueing ¶ 4.

After obtaining these statements from Mr. Petkovsek and the customer, Mr. Hinthorne and Casino Manager Kevan Coates met with Ms. Neal to obtain a statement from her.  Dep. of Hinthorne at 82, 83.  During this meeting, Ms. Neal admitted in writing that she had words with Mr. Petkovsek but did not admit to the use of profanity or threats. Id. at 84, 101; Aff. of Sueing ¶ 4.  After the meeting, Mr. Coates and Mr. Hinthorne suspended Ms. Neal pending an investigation.  Dep. of Neal 58, 73.  They then gave the information they had received from those involved in the situation to the human resources department as well as Table Games Director Bill Hood.  Dep. of Hinthorne at 86, 97; Dep. of Hood 46.

On December 21, 2006, Ms. Neal met with Director of Human Resources Barbara Bolender and signed a statement admitting that she had called Mr. Petkovsek a "skinny motherfucker" and that she threatened him by stating, "Anything else you want to say to me you can say to my two brothers."  Dep. of Neal at 323, 324; Dep. of Bolender at 7, 42. After this admission, Ms. Bolender, with the input of Mr. Hood, decided to discharge Ms. Neal.  Dep. of Bolender at 44; Dep. of Hood at 60, 61.

The following day, December 22, 2006, Ms. Neal sent a letter to Indiana Gaming, in which she again admitted to telling Mr. Petkovsek, "[Shut] your skinny mother fucking

mouth.  Anything else you have to say to me, you can say it to my two brothers."  Dep. of Neal at 30, 31.

### III.    *Other Employees of Indiana Gaming*

Donna McCarty, a white female Table Games Dealer, received a three-day suspension on November 19, 2001 for making a profane statement to a co-worker, including, among other things, calling certain other employees "a bunch of fucking babies."  Dep. of Neal at 350.  The discipline issued to Ms. McCarty prior to that incident related only to attendance and the technical aspects of her job performance.  Aff. of Sueing ¶ 8, 9.

Judy Conger, also a white female Table Games Dealer, received a three-day suspension on February 1, 2006 for making a profane statement about a co-worker in front of other employees.  Dep. of Neal at 349.  Ms. Conger had received no discipline prior to that incident.  Aff. of Sueing ¶ 11, 12.

Ronald Remley, a white male Table Games Dealer, was discharged on March 25, 2006 for a profane, threatening outburst made to an employee in the human resources department.  His prior discipline record included a written warning, issued on September 12, 2000, for shouting at a shift scheduler.  Id. at ¶ 14, 15; Aff. of Collins ¶ 10 (Ex. G) (noting that he "threatened" to go over the scheduler's head but not noting any threat of physical violence).

Duc Lu, an Asian-American male table games dealer, received a three-day

6

suspension on June 1, 2000, when, after receiving a written warning related to his technical job performance, Mr. Lu told his supervisor, "This is bullshit you motherfucker."  Id. at ¶ 16; Aff. of Collins ¶ 10 (Ex. F).  He had received no discipline prior to that incident.  Id. at ¶17.

According to Ms. Neal, in September 2006, Derrick Reid, an African-American male, threatened physical violence and directed profanity toward a customer of the casino.  Ms. Neal also asserts that Mr. Reid told Mr. Hinthorne that he wanted to "kick the customer's ass,"  Dep. of Neal at 348-349, and that Mr. Reid was not disciplined for this conduct.  Mr. Reid did receive a verbal warning regarding inappropriate behavior in September 1999 and a similar written warning in July 2002.  Aff. of Collins ¶ 10 (Ex. B). In the two more serious incidents involving Mr. Reid, he explicitly contested the magnitude of the complaints leveled against him and never admitted to wrongdoing involving threats.  See id.[4]

In June 2001, Irvin Washington, an African-American male, was promoted from the position of Security Guard to Dealer despite previously being suspended for five days for threatening behavior toward another employee.  Aff. of Collins ¶ 10 (Ex. D).  In October 2002, Mr. Irvin used profanity and acted inappropriately in the presence of customers, for which he was given a written warning.  Id.

In late 2001, Ms. Neal complained that a white female co-worker, Kathy Nigro,

---

[4]Mr. Hinthorne also was aware, in 2006, that another employee had taken out a restraining order against Mr. Reid.  Dep. of Hinthorne at 91-92.

told other employees that Ms. Neal had made a racist remark regarding the September 11,

2001 terrorist attacks.  Id. at 174.  Subsequently, Ms. Nigro admitted to Ms. Neal that this

had been a lie.  Aff. of Neal ¶ 17-20.  Casino Manager Joe McVeigh held a meeting with

the two employees, at which Ms. Nigro admitted that she had "heard the statement

wrong" and apologized to Ms. Neal.  In January 2008, after hearing from a co-worker that

Ms. Nigro had repeated the comments, Ms. Neal met with Mr. McVeigh again and with

Ms. Thiemann to complain about the comments. Dep. of Thiemann (Ex. 21).

On February 14, 2002, Ms. Thiemann met with Ms. Nigro about the matter, at

which point Ms. Nigro filed a complaint with human resources, asserting that Ms. Neal

had yelled at her and threatened her with physical violence.  Dep. of Neal at 181.  At

about the same time, Ms. Neal also talked with Table Games Director Bill Hood about the

comments, but eventually decided not to pursue her complaint relating to the comments.

Dep. of Neal at 190, 214.  Neither Ms. Neal nor Ms. Nigro received discipline for any of

these complaints.


**IV.  The Present Lawsuit**

On January 22, 2007, Ms. Neal filed a pro se complaint with the Indiana Civil

Rights Commission, which investigated her charge and referred the matter to the Equal

Employment Opportunity Commission ("EEOC") for further review.  The EEOC

provided Ms. Neal with a Right to Sue Notice on March 14, 2008.  Her Second Amended

Complaint alleges race discrimination, gender discrimination, and retaliation, all under

8

Title VII of the Civil Rights Act of 1964.

## *Legal Analysis*

### I.    *Motion for Reconsideration and Motion to Dismiss*

Defendant's Motion for Reconsideration and Motion to Dismiss set out the same arguments and ask for the same end result: the dismissal of Count III of Plaintiff's Second Amended Complaint.[5]  For the reasons discussed below, dismissal is warranted.  We hereby <u>grant</u> the Motion to Dismiss, and <u>deny</u> the Motion for Reconsideration as moot.

### A.    *Motion for Reconsideration*

On July 7, 2008, Defendants (then Penn National Gaming, Inc. as well as Indiana Gaming) moved to dismiss Plaintiff's First Amended Complaint in its entirety as to Penn National Gaming and to dismiss only Count III as to Indiana Gaming.  <u>See</u> Docket No. 31.  Prior to a ruling on this fully briefed motion, Plaintiff moved for leave to file a Second Amended Complaint, a request the Court granted on August 8, 2008, while also stating specifically that "[t]he court will deem the pending Motion to Dismiss to apply to Count III of this Second Amended Complaint."  Docket No. 44.  In accordance with this

---

[5]Ms. Neal contends that Indiana Gaming cannot raise an affirmative defense to Count III because her Second Amended Complaint "wipe[d] away prior pleadings," <u>Massey v. Helman</u>, 196 F.3d 727, 735 (7th Cir. 1999), and Indiana Gaming failed to timely assert this affirmative defense by answer.  This allegation is not, however, supported by the record.  Indiana Gaming has responded in a timely fashion and in accordance with the Court's orders, as well as timely filing its renewed Motion to Dismiss Count III on April 9, 2009.  <u>See</u> Docket No. 68; Docket No. 69.

order, Indiana Gaming did not renew its Motion to Dismiss Count III.

Thereafter, on March 26, 2009, the Court granted Penn National Gaming's Motion to Dismiss, and without specific reference to the August 8, 2008 order, also found Indiana Gaming's Motion to Dismiss Count III to be moot.  See Docket No. 66.  With its Motion for Reconsideration, Indiana Gaming requests the Court to reconsider its decision deeming that motion moot, in accordance with the August 8, 2008 order, and seeks a merit-based determination of the Motion to Dismiss Count III.  Presumably in an excess of caution, soon after filing its Motion for Reconsideration, Indiana Gaming also filed a new Motion to Dismiss Count III directed explicitly at Plaintiff's Second Amended Complaint, which advanced identical arguments to those contained in the earlier Motion to Dismiss which generated the Motion for Reconsideration.  Indiana Gaming's renewed Motion to Dismiss, which we discuss below, renders its Motion for Reconsideration moot.  Accordingly, the latter motion shall be denied as such.

B.      *Motion to Dismiss*

Count III of Plaintiff's Second Amended Complaint alleges a claim of retaliation. Indiana Gaming's Motion to Dismiss contends that Ms. Neal's retaliation claim must be dismissed because she failed to exhaust her administrative remedies as to that claim.

"Title VII makes discrimination and retaliation separate wrongs."  Heuer v. Weil-McLain, 203 F.3d 1021, 1022-23 (7th Cir. 2000).  Accordingly, "retaliation and . . . discrimination claims are sufficiently dissimilar that an administrative charge of one fails

10

to support a subsequent civil suit for the other." Noreuil v. Peabody Coal Co., 96 F.3d 254, 258 (7th Cir. 1996). In other words, because alleging "discrimination is deemed not to place the employer on notice that he is being charged with retaliation," Heuer, 203 F.3d at 1023, the failure to include a retaliation claim in a discrimination charge results in that claim not being administratively exhausted and subject to dismissal.

In her Second Amended Complaint, Ms. Neal makes general allegations that she suffered retaliation while she was employed with Defendant, but her EEOC charge includes no such claim, nor does it mention the protected activity she alleges in Count III, namely, "complaining to Defendant." Second Am. Compl. ¶ 44. Courts construe civil rights charges liberally in recognition of the fact that employees often file such charges themselves. Ezell v. Potter, 400 F.3d 1041, 1047 (7th Cir. 2005). Thus, a plaintiff may bring claims that are "included in or reasonably related" to the underlying administrative charge and reasonably could have developed from the investigation of the charge. Id. at 1046. "Claims are reasonably related if there is a factual relationship between them." Id.

Ms. Neal contends that the term "pretext" in her EEOC charge was sufficient to give notice of a retaliation claim and that the factual allegations that undergird her discrimination claims also form the basis of her claim of retaliation because they "all relate to the subjective intent of Defendant's managers and Defendant's Human Resources when the decision was made to terminate Plaintiff's employment." Pl.'s

11

Responst at 4.[6]  However, this asserted factual relationship is so attenuated as to require a broad reading of her EEOC charge that would, in effect, "eviscerate the statutory charge requirement."  Novitsky v. American Consulting Engineers, LLC, 196 F.3d 699, 701 (7th Cir. 1999).  If we were to accept this attenuated connection, it would usurp the fundamental role of the EEOC to investigate and conciliate allegations of inappropriate conduct.  Hottenroth v. Slinger, 388 F.3d 1015, 1035 (7th Cir. 2004).  Accordingly, because there is no basis to conclude that Ms. Neal's retaliation claim is reasonably related to her claims of discrimination, her claim must be dismissed for failure to exhaust her administrative remedies.  Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 550 (7th Cir. 2002).

For the foregoing reasons, Defendant's Motion to Dismiss Count III of Plaintiff's Second Amended Complaint is granted.

## II.    Motion for Summary Judgment

### A.    Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[6]Ms. Neal also attempts to direct the Court to her Indiana Civil Rights Commission questionnaire, rather than her Charge of Discrimination.  However, this document it outside the pleadings; even if it were properly considered on a motion to dismiss, it is the Charge of Discrimination, and not the questionnaire, that controls the scope of administrative exhaustion. Tamayo v. Blagojevich, 526 F.3d 1074, 1089 (7th Cir. 2008).

Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  See id. at 255.  However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  See Shields Enterprises,

Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of

Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be

unable to satisfy the legal requirements necessary to establish his or her case, summary

judgment is not only appropriate, but mandated.  See Celotex, 477 U.S. at 322; Ziliak v.

AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).   Further, a failure to prove one

essential element "necessarily renders all other facts immaterial."  Celotex, 477 U.S. at

323.

A plaintiff's self-serving statements, which are speculative or which lack a

foundation of personal knowledge, and which are unsupported by specific concrete facts

reflected in the record, cannot preclude summary judgment.  Albiero v. City of Kankakee,

246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999);

Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment

discrimination cases, because intent and credibility are such critical issues and direct

evidence is rarely available.  Seener v. Northcentral Technical Coll., 113 F.3d 750, 757

(7th Cir. 1997); Wohl v. Spectrum Mfg., Inc., 94 F.3d 353, 354 (7th Cir. 1996).  To that

end, we carefully review affidavits and depositions for circumstantial evidence which, if

believed, would demonstrate discrimination.  However, the Seventh Circuit has also made

clear that employment discrimination cases are not governed by a separate set of rules,

and thus remain amenable to disposition by summary judgment so long as there is no

genuine dispute as to the material facts.  Giannopoulos v. Brach & Brock Confections,

Inc., 109 F.3d 406, 410 (7th Cir. 1997).


**B.**     *Improperly Motivated Termination*

Under Title VII, it is unlawful for an employer to "to discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment because of such individual's race . . . [or] sex."

42 U.S.C. § 2000e-2(a)(1).  A Title VII "plaintiff can prove discrimination either by

presenting evidence of discrimination (the 'direct method' of proof)," or by the burden-

shifting analysis established in McDonnell Douglas v. Green, 411 U.S. 792 (1973) (the

"indirect method" of proof).  Darchak v. City of Chicago Bd. of Educ., 580 F.3d 622, 631

(7th Cir. 2009).  In the case at bar, the parties have not engaged in the direct-method

approach, so we address Plaintiff's claim only under the indirect method of proof.


1.     Indirect Method

Under the McDonnell Douglas framework, a plaintiff must begin by establishing a

*prima facie* case of discrimination.  If one can be established, the burden shifts to the

defendant to articulate a nondiscriminatory reason for the actions it took against the

plaintiff.  If the defendant can offer a legitimate, nondiscriminatory reason for the

employment decision, the burden reverts to the plaintiff to show that there is a genuine

dispute of material fact that the proffered reason for the employment action is pretextual.

Nese v. Julian Nordic Constr. Co., 405 F.3d 638, 641 (7th Cir. 2005).  The traditional

*prima facie* case requires a showing by the plaintiff: (1) that she was part of a class of persons protected by Title VII; (2) that she was meeting her employer's legitimate job expectations; (3) that she suffered an adverse employment action; and (4) that similarly-situated individuals outside her protected class were treated more favorably.  See Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827, 830 (7th Cir. 2007).  Because Indiana Gaming does not challenge the first and third prongs of Ms. Neal's *prima facie* case under the McDonnell Douglas framework, to wit, that she was a member of a protected class (in fact, two protected classes, because of her race and gender) and that she was terminated, which constitutes an adverse employment action, only the following McDonnell Douglas analysis is at issue: the question of the adequacy of her work performance, the question of whether similarly situated employees were treated more favorably, and the question of pretext.

a.      Ms. Neal Did Not Meet Indiana Gaming's Legitimate Expectations

Ms. Neal admitted, on two separate occasions, to having called Mr. Petkovsek a "skinny motherfucker" and threatening that "anything else [he had] to say to [her], [he could] say to [her] two brothers," one of whom is (is) an FBI agent.  This behavior, standing alone, prevents Ms. Neal from establishing that she was meeting Indiana Gaming's legitimate expectations at the time of her discharge.

Ms. Neal attempts to distract attention from this fact by pointing to the positive performance evaluations she received throughout her employment, as well as to her

qualifications to deal table games at the casino.  She also attempts to diminish the significance of each incident which resulted in some form of discipline being applied to her throughout her employment.  However, this approach, as well as her reliance on a string of inapposite cases, does nothing to address the critical issue: her substandard job performance at the time of her discharge.  E.g., Gates v. Caterpillar, Inc., 513 F.3d 680, 689 (7th Cir. 2008) ("The proper inquiry mandates looking at [the plaintiff's] job performance through the eyes of her supervisors at the time of her suspension and termination."); Burks v. Wisconsin Dept. of Transp., 464 F.3d 744, 753 (7th Cir. 2006).[7]

Through her employee handbook, Ms. Neal was aware of the punishment possible for conduct such as her threat to Mr. Petkovsek.  That conduct, which she eventually admitted to Ms. Bolender at a December 21, 2006 meeting and in a letter dated December 22, 2006, fell completely outside acceptable conduct and the employer's reasonable expectations.  Anders v. Waste Management of Wisconsin, 463 F.3d 670, 676 (7th Cir. 2006) (holding that threats of violence in contravention of employer's policies constituted failure to meet performance standards and that alleged misinterpretation of threat did not create a genuine issue of material fact).  Therefore, on the uncontroverted facts adduced here, it is clear that Ms. Neal cannot establish the second prong of her *prima facie* case of discrimination against Indiana Gaming.

---

[7]It also appears both here and in other portions of her briefing, that Ms. Neal misinterprets Indiana Gaming's "progressive discipline" policy, which applies to minor infractions and not necessarily to more serious misconduct like that which precipitated the termination of her employment.

b.      Ms. Neal was not Treated Less Favorably than Similarly Situated Co-Workers

Even if Ms. Neal could show that she met Indiana Gaming's legitimate job expectations, she would also have to show that a similarly situated individual outside one of her protected classes was treated more favorably.  "To be similarly situated, another employee must be directly comparable in all material respects."  Hurst v. Ball Memorial Hosp., Inc., 2007 WL 1655794, at *5 (S.D. Ind. June 1, 2007).  While "[a] similarly situated employee need not be 'identical,' . . . the plaintiff must show that the other employee dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his] conduct or the employer's treatment of [him]."  Caskey v. Colgate-Palmolive Co., 535 F.3d 585, 592 (7th Cir. 2008) (citations omitted).


i.      Male Employees

Ms. Neal first contends that Indiana Gaming treated male employees more favorably for comparable or worse behavior.  According to Ms. Neal, Derrick Reid, who had a history of discipline, threatened to "kick a customer's ass," a threat for which he received no discipline.  However, Ms. Neal has produced no evidence of this incident apart from her own assertions, which is insufficient to create a genuine issue of material fact.  Albiero, 246 F.3d at 933.  In fact, Mr. Hinthorne, whom she alleges was present at the time of the incident, denied that the incident occurred.  Dep. of Hinthorne at 92.  Moreover, she has presented no evidence that any of the supervisors who were involved

18

in her discharge had any knowledge of this incident.  <u>See</u> Dep. of Hood at 77; Dep. of

Bolender at 48.  Thus, she cannot establish that Mr. Reid was a similarly situated

employee to her.  <u>Little v. Illinois Dept. of Revenue</u>, 369 F.3d 1007, 1012 (7th Cir. 2004)

("A similarly situated employee must have been disciplined, or not, by the same

decisionmaker who imposed an adverse employment action on the plaintiff.").

Irvin Washington, another male employee of Indiana Gaming, was promoted to the

position of Dealer, despite having previously been suspended for five days for

inappropriate and threatening behavior toward another employee, and received minor

discipline for later inappropriate conduct.  The first problem with Ms. Neal's reliance on

Mr. Washington as a basis for comparison is that she mischaracterizes the nature of his

later discipline, which did not, in fact, involve any threatening behavior.  Moreover, any

comparison to Mr. Washington is misplaced because he worked in another department

and for a different supervisor than did Ms. Neal.  <u>Stockhoff v. D.E. Baugh Co., Inc.</u>, 2003

WL 1090203, at *5 (S.D. Ind. Mar. 10, 2003) (Barker, J.).

Ms. Neal next points to Duc Lu, who received a three-day suspension for a profane

comment to a supervisor.  This comparison is also improper, however, because his prior

discipline record was dissimilar to Ms. Neal's and because he never made any sort of

threat, as Ms. Neal did.  This "mitigating" difference negates Ms. Neal's ability to use

Mr. Lu as a basis for comparison.  <u>Caskey</u>, 535 F.3d at 592.

Finally, Ron Remley, who in September 2000 had received a written warning for a

profane outburst, was eventually discharged for a threatening tirade that took place in

19

March 2006, which is similar to Ms. Neal's situation.  Ms. Neal attempts to distinguish

her treatment from his by asserting that he engaged in threatening conduct between these

two incidents, and that he was never disciplined for that intervening conduct.  However,

the factual record provides no support for this assertion aside from Ms. Neal's own

assertions.

On the facts before the Court, Mr. Remley's only similar infraction to Ms. Neal's

did result in his discharge.  Therefore, he and Ms. Neal were treated similarly.  Further

undermining her reliance on Mr. Remley as a basis for comparison, Ms. Neal has offered

no evidence that any of the decisionmakers involved in her discharge were also involved

in the discipline and subsequent discharge of Mr. Remley.  Little, 369 F.3d 1007.

Accordingly, Ms. Neal has not and apparently cannot show that Mr. Remley was a

similarly situated employee.

For all of the foregoing reasons, Ms. Neal's attempts to establish that a similarly

situated male employee was treated more favorably than she was come up short.


ii.      White Employees

In advancing her contention that white employees were also treated more

favorably, Ms. Neal first offers the example of Ms. Nigro, who was not disciplined

despite Ms. Neal's complaint that Ms. Nigro falsely told co-workers that Ms. Neal had

made racially charged comments about the September 11, 2001 disaster.  In fact, over the

course of a few months in 2001 and 2002, Ms. Neal and Ms. Nigro lodged complaints

about each other, and neither was disciplined.

It is difficult to determine how Ms. Neal thinks the situation involving Ms. Nigro provides a meaningful comparison to her own discharge.  Nothing in Ms. Neal's allegations or the record indicates that Ms. Nigro made any threats, or even engaged in a profane outburst.  Therefore, Ms. Nigro's situation is irrelevant to Ms. Neal's showing of a similarly situated employee.

Ms. Neal also offers the examples of Judy Conger and Donna McCarty, both of whom received three-day suspension for making profane comments to co-workers.  These comparisons are also inapposite, because neither of these employees had prior disciplinary records similar to Ms. Neal's and because neither ever made a threat of violence, which was the ultimate reason for Ms. Neal's discharge.  Thus, these employees are not similarly situated to Ms. Neal.   Caskey, 535 F.3d at 592.

Thus, Ms. Neal is unable to establish that a similarly situated white employee was treated more favorably than she was, which defeats the fourth prong of her *prima facie* case of discrimination against Indiana Gaming.


c. Pretext

Although typically a finding that the plaintiff cannot establish her *prima facie* case precludes the necessity of a judicial discussion of pretext, "[w]here a plaintiff claims, as [Ms. Neal] does, that an employer's legitimate expectations were disparately applied the second and fourth elements of the *prima facie* case are closely intertwined with the

pretext analysis, and the two inquiries may be merged and considered together." Faas v. Sears, Roebuck & Co., 532 F.3d 633, 642 (7th Cir. 2008). Accordingly, in response to the factual circumstances alleged by Plaintiff, we shall also address the issue of pretext.

To prove pretext, Ms. Neal must establish that Indiana Gaming's proffered reason for terminating her employment was a lie. Faas, 532 F.3d at 642; Atanus v. Perry, 520 F.3d 662, 674 (7th Cir. 2008) (quoting Bahl v. Royal Indem. Co., 115 F.3d 1283, 1291 (7th Cir. 1997)) ("The main inquiry in determining pretext is whether the employer 'honestly acted' on the stated reason."). Ms. Neal advances two arguments purporting to establish pretext.

First, she contends that Indiana Gaming's "superficial investigation" of the incident leading to her discharge casts doubt on the honesty of the stated reason for that discharge. Specifically, Ms. Neal contends that Indiana Gaming ignored "inconsistencies" between the statements of Mr. Petkovsek and the customer who was present at the time of the incident in concluding that further investigation was unnecessary. This contention itself ignores the critical fact that formed the basis for Indiana Gaming's decision to conclude the investigation: Ms. Neal herself admitted to using profane language and to threatening Mr. Petkovsek. The information available to Ms. Bolender and Mr. Hood, including Ms. Neal's admission, showed that Mr. Petkovsek was threatened by Ms. Neal, that a customer corroborated that such a threat occurred, and that Ms. Neal admitted to making the threat. Dep. of Bolender at 47. It was reasonable therefore for Indiana Gaming to decide, based on her admission to dischargeable conduct,

that further investigation was unnecessary.  This pretext argument is thus clearly unavailing.

Ms. Neal also contends that Indiana Gaming "shifted its reasons for terminating her employment."  Her argument in this regard alleges inconsistencies in Indiana Gaming's characterization of her prior disciplinary history.  This argument, too, is unavailing because no such shift occurred - Indiana Gaming's stated reason for terminating Ms. Neal's employment was and has always been that she committed a serious offense when she threatened a co-worker.  Her checkered employment history, though supportive of Indiana Gaming's decision to fire her, was not an essential part of this decision, and it is not relevant to a determination of whether Indiana Gaming acted honestly in discharging her.

On the record before the Court, it is abundantly clear that Indiana Gaming chose to terminate Ms. Neal's employment because, on December 11, 2006, she used profanity and threatened a co-worker, and that this decision was honestly made and not pretextual.

For all of the foregoing reasons, Indiana Gaming is entitled to summary judgment as a matter of law.

### III.  Conclusion

Having carefully considered the parties' arguments relating to Plaintiff's claims of race and gender discrimination, we <u>GRANT</u> Defendant's Motion for Summary Judgment; <u>GRANT</u> Defendant's Motion to Dismiss Count III; and <u>DENY</u> Defendant's Motion for

Reconsideration as moot.  Final judgment shall be entered accordingly.


IT IS SO ORDERED.

Date: _____12/31/2009_____

Copies to:

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Laurence F. Alter
ALTER & ALVAREZ
altalv@swbell.net

Catalina M. Alvarez
ALTER & ALVAREZ
altalv@swbell.net

Carrie Atkins Barron
FREKING & BETZ
cbarron@frekingandbetz.com

Becky J. Ganis
FREKING & BETZ LLC
bganis@frekingandbetz.com

David C. Nelson
ALTER & ALVAREZ
altalv@swbell.net

George M. Reul Jr.
FREKING & BETZ, LLC
greul@frekingandbetz.com